UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TIMOTHY W. CAIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   No. 1:15-cv-00068-JMS-MJD |
| | ) |
| CAROLYN W. COLVIN, | ) |
| | ) |
| Defendant. | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Timothy W. Cain applied for disability and disability insurance benefits from the Social Security Administration ("SSA") in November 8, 2011, alleging an onset date of October 31, 2008. [Filing No. 11-5 at 2.] His applications were denied initially on January 17, 2012, [Filing No. 11-4 at 1-9], and upon reconsideration on April 2, 2012, [Filing No. 11-4 at 13]. Administrative Law Judge ("ALJ") David H. Welch held a hearing on April 16, 2013, [Filing No. 11-4 at 44], and a supplemental hearing on September 26, 2013, [Filing No. 11-4 at 81], whereupon he issued a decision on October 25, 2013, concluding that Mr. Cain was not entitled to receive benefits. [Filing No. 11-2 at 9.] The Appeals Council denied review on November 24, 2014. [Filing No. 11-2 at 2.] Mr. Cain then filed this civil action, asking the Court to review the denial of benefits pursuant to 42 U.S.C. § 405(g), 28 U.S.C. § 1361, and 42 U.S.C. § 1383(c)(3). [Filing No. 1.]

# I.
### BACKGROUND

Mr. Cain was born on June 11, 1959, [Filing No. 11-2 at 59], and has a high school education with previous work experience as a production assembler, [Filing No. 11-2 at 21].[1] The ALJ found that Mr. Cain met the insured status requirements of the Social Security Act through December 31, 2012. [Filing No. 11-2 at 14.] Using the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4), the ALJ issued an opinion on October 25, 2013, determining that Mr. Cain was not entitled to receive disability benefits. [Filing No. 11-2 at 12.] The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Mr. Cain had not engaged in substantial gainful activity[2] since the alleged onset date. [Filing No. 11-2 at 14.]

- At Step Two of the analysis, the ALJ found that Mr. Cain suffered from the severe impairment of chronic fatigue syndrome. [Filing No. 11-2 at 15.]

- At Step Three of the analysis, the ALJ found that Mr. Cain did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 11-2 at 15.]

- After Step Three but before Step Four, the ALJ found that Mr. Cain has the residual functional capacity ("RFC") for: "lifting up to twenty pounds

---

[1] Mr. Cain detailed pertinent facts in his opening brief, and the Commissioner did not dispute those facts. Because those facts implicate sensitive and otherwise confidential medical information concerning Mr. Cain, the Court will simply incorporate those facts by reference herein. Specific facts will be articulated as needed.

[2] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a); 20 C.F.R. § 416.972(a).

occasionally and lifting and carrying up to ten pounds frequently; sitting, standing, and walking, respectively, for approximately two hours at one time, each, and sitting, standing and walking, respectively, for approximately six hours, each, during an eight hour work day, with normal breaks; never climbing ladders, ropes, scaffolds, but occasionally climbing ramps, stairs, balancing, stooping, kneeling, crouching, crawling; frequently reaching, overhead reaching, handling, i.e., gross manipulation, fingering, i.e. fine manipulation, and feeling; never exposed to unprotected heights or operating a commercial vehicle, but occasionally exposed to extreme cold, heat, humidity, excessive vibrations, excessive loud noise, and occasionally using moving machinery or exposed to pulmonary irritants such as fumes, odors, dust and gases." [Filing No. 11-2 at 16.]

- At Step Four of the analysis, the ALJ found that Mr. Cain is capable of performing past relevant work as a production assembler. [Filing No. 11-2 at 21.]

- The ALJ did not reach Step Five of the analysis due to his finding at Step Four that Mr. Cain could perform his past relevant work. [Filing No. 11-2 at 23.]

Mr. Cain sought review of the ALJ's decision from the Appeals Council, but that request was denied, making the ALJ's decision the Commissioner's final decision subject to judicial review. Mr. Cain then filed this action, asking that the Commissioner's decision be reversed and requesting an award of benefits, or in the alternative, that the case be remanded for further proceedings. [Filing No. 1.]

## II.
### STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id*. at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

### III.
#### DISCUSSION

Mr. Colvin makes three arguments in support of his appeal: (1) the ALJ erred at Step Two of the analysis in determining that Mr. Cain's impairments were not severe; (2) the ALJ failed to address the medical expert's testimony that Mr. Cain met or equaled listings 7.02 and 7.06 at Step

5

Three of the analysis; and (3) the ALJ used the wrong legal standard to weigh the treating physicians' opinion evidence and his decision on this issue was not supported by substantial evidence. The Court will address the issues in turn.

**A. Step Two**

Mr. Cain argues that the ALJ erred at Step Two when he determined that Mr. Cain did not suffer from severe impairments other than chronic fatigue syndrome, which he claims was not mentioned in the record. [Filing No. 13 at 7-8.] Mr. Cain alleges that the record clearly establishes that his physical impairments have more than a minimal effect on his ability to work and cites the opinions of treating physicians Purnendu Datta, M.D., ("Dr. Datta") and Marwan Ghabril, M.D., ("Dr. Ghabril") to support this contention. [Filing No. 13 at 9.] Mr. Cain states that Dr. Datta's opinion describes Mr. Cain's physical impairments and restrictions, and Dr. Ghabril's opinion describes Mr. Cain's diagnosis of peptic ulcer disease and gastric outlet obstruction, which is associated with blood loss and chronic anemia. [Filing No. 13 at 9.] In addition, Mr. Cain states that Lee A. Fischer, M.D., ("Dr. Fischer"), a non-treating physician, testified in the initial hearing that Mr. Cain met or equaled the listings for chronic anemia and thrombocytopenia, but not until February 2013. [Filing No. 13 at 9.] Mr. Cain argues that the ALJ's findings are not supported by substantial evidence and that this Court should find that Mr. Cain satisfied his burden to prove that he suffers from peptic ulcer disease, chronic anemia, thrombocytopenia, and migraine headaches.[3] [Filing No. 13 at 10.]

In response, the Commissioner argues that the fact that the ALJ determined Mr. Cain to suffer only from a severe impairment of chronic fatigue syndrome is of no consequence to the

---

[3] Mr. Cain states that the ALJ found the following impairments to be non-severe: "anemia, chronic obstructive pulmonary disorder, peptic ulcer, carpal tunnel syndrome, migraine headaches, and substance addiction disorder, alcohol, in remission for many years." [Filing No. 13 at 8.]

6

outcome of the case. [Filing No. 18 at 9-10.] The Commissioner states that the severity assessment is a "threshold inquiry" that is undertaken to screen out groundless claims. [Filing No. 18 at 10 (citing *Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010)]. Thus, since the ALJ found Mr. Cain to suffer from at least one severe impairment, the Commissioner argues that this allowed the ALJ to proceed to the third step of the evaluation process. Additionally, the Commissioner argues that Mr. Cain does not explain how the ALJ's determination that Mr. Cain's only impairment was chronic fatigue syndrome affected the outcome of the decision. [Filing No. 18 at 11.]

Mr. Cain does not address this issue on reply.

A severe impairment is an impairment or combination of impairments that "significantly limits [one's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c). The ALJ is required to determine at Step Two whether the claimant in fact has an impairment or combination of impairments that is severe. *Castile,* 617 F.3d at 926-27 (citing 20 C.F.R. § 404.1520(a)(4)(ii)). The burden is on the claimant to prove that the impairment is severe. *Id.* at 926. As long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the next step of the evaluation process. *Id.* at 927 (citing 20 C.F.R. § 404.1523). If an ALJ finds one or more of a claimant's impairments to be severe, he needs to "consider the aggregate effect of the entire constellation of ailments—including those impairments that in isolation are not severe." *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003). "Therefore, the step two determination of severity is merely a threshold requirement." *Castile*, 617 F.3d at 927.

The Court rejects Mr. Cain's Step Two challenge. The ALJ found Mr. Cain to have the severe impairment of chronic fatigue syndrome, [Filing No. 11-2 at 15], and after making that determination, the ALJ proceeded beyond Step Two in making his ultimate disability decision

regarding Mr. Cain, [Filing No. 11-2 at 15-23]. The Step Two determination is "merely a threshold requirement," *Castile*, 617 F.3d at 927, and 20 C.F.R. § 404.1523 requires the ALJ to consider "the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." Thus, even if it were error for the ALJ to not consider certain impairments to be severe at Step Two, that "particular determination is of no consequence" because the ALJ proceeded through the remaining steps of the sequential analysis. *Castile*, 617 F.3d at 927. A remand on this issue is not warranted.

### B. Listings 7.02 and 7.06

Mr. Cain argues that the ALJ erroneously decided that Mr. Cain did not meet Listing 7.02 (chronic anemia) or 7.06 (chronic thrombocytopenia) at Step Three of the analysis. Mr. Cain alleges that during the initial hearing, medical expert Dr. Fischer testified that Mr. Cain met those listings. [Filing No. 13 at 11.] Further, Mr. Cain argues that he was unable to obtain medical treatment regularly due to his financial situation, and that it was evident from Dr. Datta's examination that he suffered anemia and that his condition was dire. [Filing No. 13 at 11.] He further states that the ALJ implied that he would issue a favorable decision if Mr. Cain agreed to amend his onset date to February 2013, but Mr. Cain ultimately chose not to amend. [Filing No. 13 at 11.] Additionally, Mr. Cain states that the ALJ admitted that Mr. Cain's condition was ongoing for years and that he was concerned that Mr. Cain's financial circumstances prevented him from seeking treatment. [Filing No. 13 at 11 (citing Filing No. 11-2 at 97).] He further claims that Dr. Fischer admitted that Mr. Cain's "really low" level of hemoglobin in February 2013 could have reflected a chronic blood loss that occurred over a period of time. [Filing No. 13 at 11.]

In response, the Commissioner argues that Mr. Cain's argument is misleading because it does not address the full context of Dr. Fischer's testimony at the initial hearing, his subsequent interrogatory responses, and his testimony at the supplemental hearing. [Filing No. 18 at 11.] The

8

Commissioner states that during the initial hearing, Dr. Fischer did not have copies of Mr. Cain's February 2013 medical records, and that after Mr. Cain and his attorney recited the contents of those records, Dr. Fischer determined that Mr. Cain "met the listing for chronic anemia and possibly chronic thrombocytopenia" since his 2013 hospitalization. [Filing No. 18 at 11.] The Commissioner states that after the hearing, Dr. Fischer reviewed the additional medical records and exhibits and completed interrogatory responses, determining Mr. Cain did not meet any listing. [Filing No. 18 at 12.] Further, the Commissioner argues that during the supplemental hearing, Dr. Fischer discussed Mr. Cain's functional abilities again and Mr. Cain's attorney did not ask Dr. Fischer any questions. [Filing No. 18 at 12.]

In reply, Mr. Cain does not address this issue.

The ALJ is responsible for deciding whether a listing is met or equaled. SSR 96-6p. Whether a claimant's condition equals a listed impairment is "strictly a medical determination" and "the focus must be on medical evidence." *Florence v. Colvin*, 2013 WL 3724806, at *9 (S.D. Ind. 2013) (citing *Hickman v. Apfel,* 187 F.3d 683, 688 (7th Cir.1999)). "[L]ongstanding policy requires that the judgment of a physician . . . designated by the Commissioner on the issue of equivalence . . . must be received into the record as expert opinion evidence and given appropriate weight." SSR 96-6p. Thus, an ALJ may rely on a state agency physician's opinion to determine medical equivalence. *See Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 679 (7th Cir. 2010); *see also Scott v. Sullivan*, 898 F.2d 519, 524 (7th Cir. 1990) (the ALJ relied on the disability examination by a state agency physician, which was conducted two months after the claimant filed for benefits and resulted in a finding that the claimant failed to meet any of the listings).

The Court finds that there was enough evidence in the record for the ALJ to conclude that Mr. Cain did not meet or equal Listings 7.02 or 7.06. Dr. Fischer participated at the initial hearing

9

through a conference call. [Filing No. 11-2 at 84.] He had copies of Mr. Cain's medical records, but was missing exhibits from Mr. Cain's 2013 hospitalization. [Filing No. 11-2 at 85.] Mr. Cain and his attorney proceeded to describe the contents of those records to Dr. Fischer, and based on that testimony, Dr. Fischer stated that he thought Mr. Cain met the listing of chronic anemia and possibly a listing for chronic thrombocytopenia as of the 2013 hospitalization. [Filing No. 11-2 at 95.] However, after the initial hearing, Dr. Fischer had the opportunity to review Mr. Cain's complete record, including the missing exhibits, and opined that Mr. Cain did not meet or equal any listed impairments. [Filing No. 11-9 at 71.] Whether a claimant meets a listing is strictly a medical determination and, therefore, the Court finds the ALJ properly relied on Dr. Fischer's opinion that Mr. Cain did not meet any listings.

**C. Opinion Evidence**

Mr. Cain argues that the ALJ used the wrong legal standard in weighing the treating physicians' opinions and his decision was not supported by substantial evidence. [Filing No. 13 at 12.] Mr. Cain alleges that the ALJ gave insufficient reasons to discount the treating physicians' opinions; for example, the ALJ stated that both treating physicians lacked Social Security knowledge and lacked objectivity to the extent of independent medical experts. [Filing No. 13 at 13.] Mr. Cain argues that these assertions would disqualify many treating physicians since most are unfamiliar with the Social Security rules and regulations. [Filing No. 13 at 13.] Further, Mr. Cain argues that there is no evidence in the record that the treating physicians are, in fact, unfamiliar with evaluating cases for Social Security purposes. [Filing No. 13 at 13.] Mr. Cain argues that, per his treating physicians' opinions, this Court should find his RFC is less than sedentary. [Filing No. 13 at 14.]

10

In his response, the Commissioner argues that the ALJ properly assessed the opinions of Dr. Datta and Dr. Ghabril. [Filing No. 18 at 13.] First, the Commissioner states that the ALJ acknowledged Dr. Datta as the treating physician, and properly found that Dr. Datta's opinion was entitled to little weight because it was inconsistent with and unsupported by other evidence in the record. [Filing No. 18 at 14.] The Commissioner states that Dr. Fischer claimed that Mr. Cain's anemia was easily treated with iron and folic acid supplements, and that Dr. Datta's opinion was overly restrictive and inconsistent with Mr. Cain's history of quick recovery from his hospitalizations. [Filing No. 18 at 14.] The Commissioner further states that Dr. Datta's opinion might not be fully objective because in identifying reports of problems, he deferred to Mr. Cain's statements. [Filing No. 18 at 14.] The Commissioner argues that Dr. Ghabril's opinion reflected uncertainty pertaining to Mr. Cain's functional limitations, stating that he could not tell whether Mr. Cain had the ability to handle work stress. [Filing No. 18 at 14-15.] Further, the Commissioner alleges that Dr. Ghabril responded with "not sure" to questions regarding Mr. Cain's functional limitations; thus, the Commissioner argues that the ALJ had the right to question Dr. Ghabril's objectivity. [Filing No. 18 at 15 (citing Filing No. 11-9 at 80).]

In reply, Mr. Cain argues that the recitation of facts in the Commissioner's response cherry-picks evidence that supports the denial of benefits and ignores evidence that supports Mr. Cain's claim. [Filing No. 19 at 3.] Mr. Cain states that the ALJ failed to consider other information, such as that Mr. Cain suffered from pernicious anemia, not anemia, that he required blood transfusions, that he had no health insurance, and that he was unable to see the doctor regularly. [Filing No. 19 at 4.] Further, Mr. Cain argues that his visit to see Dr. Datta to obtain the medical source statement prior to the hearing resulted in a finding that his hemoglobin level was dangerously low and he had to undergo a blood transfusion. [Filing No. 19 at 4.] Mr. Cain states that the ALJ improperly

11

relied on Dr. Fischer's statement that Dr. Datta's opinion was overly restrictive because other medical records demonstrate that Mr. Cain suffered from various symptoms consistent with Dr. Datta's opinion. [Filing No. 19 at 5.] Further, Mr. Cain argues that, contrary to the Commissioner's argument, Dr. Ghabril was objective when he opined honestly that he could not assess Mr. Cain's functional limitations, but affirmed that the pain would interfere with his attention and concentration frequently and constantly. [Filing No. 19 at 5.]

Under 20 C.F.R. § 404.1527, the ALJ generally must give more weight to opinions from a claimant's treating sources, and will give the opinion controlling weight if the physician's opinion on the nature and severity of the impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the ALJ opts not to give a treating physician's opinion controlling weight, he must apply a number of factors to determine what weight to give the opinion, including: 1) the length of the treatment relationship and the frequency of the examination; 2) the nature and extent of the treatment relationship; 3) support by relevant evidence; 4) consistency with the record as a whole; 5) the physician's area of specialization; and 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6). The Seventh Circuit has it made clear that an ALJ need not explicitly weigh every relevant factor to conclude that a treating physician's opinion should be discounted, as long as the ALJ articulates why it is inconsistent with the record. See *Schreiber v. Colvin*, 519 Fed. App'x. 951, 959 (7th Cir. 2013).

The Court agrees with Mr. Cain that the ALJ improperly weighed the treating physicians' opinions. The ALJ acknowledged that both Dr. Datta and Dr. Ghabril had treating medical relationships with Mr. Cain. [Filing No. 11-2 at 21.] A treating doctor's opinion receives

controlling weight if it is "well-supported" and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); *see Punzio v. Astrue,* 630 F.3d 704, 710 (7th Cir. 2011). The ALJ gave little weight to both treating physicians' opinions because, in the ALJ's opinion, they lacked knowledge and experience evaluating social security cases. This is inconsistent with the Social Security regulations' preference to afford greater weight to treating physicians:

> [W]e give more weight to opinions from [the claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [their] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527

Additionally, the ALJ failed to address any of the factors under 20 C.F.R. § 404.1527(c)(2) when discrediting both of the treating physicians' opinions. Rather, the ALJ stated that Dr. Datta lacked objectivity, and that his opinion was overly restrictive because Mr. Cain only had "one inpatient hospitalization (in 2011)." [Filing No. 11-2 at 21.] The ALJ discredited Dr. Ghabril's opinion because he also lacked the same degree of objectivity as the independent medical expert and because he was uncertain about the Mr. Cain's functional limitations. [Filing No. 11-2 at 21.]

The ALJ's explanations are insufficient. First, the ALJ failed to identify what other medical evidence in the record was inconsistent with or contradicted the treating physicians' opinions. In fact, evidence in the record shows that Mr. Cain suffered from debilitating symptoms, such as "chronic recurrent peptic ulcer disease with resulting gastric outlet obstruction" associated with blood loss and chronic anemia, [Filing No. 11-9 at 79], and the ALJ failed to address this evidence when discrediting the treating physicians' opinions. Second, the ALJ failed to address whether Mr. Cain's financial circumstances prevented him from obtaining proper medical care.

13

Seventh Circuit precedent instructs ALJs not to draw any inferences about a claimant's condition from their failure to obtain consistent medical treatment unless the ALJ has explored the claimant's explanations as to the lack of medical care, such as their inability to pay. *See Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014); *see Craft*, 539 F.3d at 679. Mr. Cain provided testimony to this effect, and the ALJ failed to address it in his decision.

The Court finds that the ALJ's failure to properly weigh the treating physicians' opinions requires remand.

### IV.
### CONCLUSION

For the reasons detailed herein, the Court **VACATES** the ALJ's decision denying Mr. Cain's benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four).

Date: October 8, 2015

*[signature]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Sherry R. Deatrick
DEATRICK LAW FIRM
deatricklaw@gmail.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov